IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| ROBERT P. JACKSON, | * | |
| Claimant, | * | |
| v. | * | CASE NO. 4:11-CV- 82 MSH |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | * | Social Security Appeal |
| | * | |
| Respondent. | | |

## ORDER

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ's) determination, denied Claimant's application for disability insurance benefits, finding that he was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted. Both parties have filed their written consents for all proceedings to be conducted by the United States Magistrate Judge, including the entry of a final judgment directly appealable to the Eleventh Circuit Court of Appeals pursuant to 28 U.S.C. § 636(c)(3).

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). "Substantial evidence is something more than a mere scintilla, but less than a

preponderance. If the Commissioner's decision is supported by substantial evidence, this court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F. 3d 1206, 1210 (11th Cir. 2005) (internal quotation marks omitted).  The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1]  *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).  It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam).  The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it.  *Id.*

The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46, 48 (5th Cir. 1973) (per curiam).  The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981).  A claimant seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1).  In addition to meeting the requirements of these statutes, in order

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991).  It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1 *et seq.*

Under the regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled. 20 C.F.R. § 404.1520, app. 1, pt. 404. First, the Commissioner determines whether the claimant is working. If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments. Next, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations (the "Listing"). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

## ISSUES

I.   **Whether the ALJ erred in determining Claimant's residual functional capacity.**

II.     **Whether the ALJ properly considered the side effects of Claimant's medications.**

III.    **Whether the ALJ adequately indicated the specific weight given to the evidence in this case.**

## Administrative Proceedings

Claimant protectively filed his current applications for a period of disability and Disability Insurance Benefits (DIB) on July 24, 2007. (Cl.'s Mem. in Supp. of Comp. 1, ECF No. 10.) Claimant originally alleged a disability onset date of February 9, 2007. (Tr. 9, ECF No. 8.) His applications were denied both initially and on reconsideration and a hearing was thereafter conducted by an administrative law judge (ALJ) on March 18, 2010. (Tr. 25-48). In his decision of June 5, 2010, the ALJ ruled that Claimant was not disabled to work and the Appeals Council denied review on May 5, 2011. (Tr. 1-3, 6-18). Claimant brings this complaint seeking review under section 205(g) of the Social Security Act.

## Statement of Facts and Evidence

Claimant has a high school education and a significant history of past relevant work as a developer of computer programs and software applications, radar technician and security professional, both as an officer as well as in a managerial capacity. (Tr. 16-17.) It is alleged that he became disabled to work as a result of low back injury, migraine headaches, severe pain and post traumatic stress disorder (PTSD) commencing February 9, 2007. (Tr. 158-160, 194).

In his decision the ALJ found that Claimant suffers from the severe impairments of spondylosis, headache, depression and anxiety, as well as obesity. (Tr. 11). However,

4

the ALJ found that Claimant has the residual functional capacity (RFC) to perform light work with limitations of a postural and environmental nature as well as mental limitations. (Tr. 13, 14). While the limitations prevent Claimant from performing past relevant work (Tr. 16, 17) after testimony from a vocational expert (VE) offered at the hearing (Tr. 41-46), the ALJ found that Claimant was nonetheless capable of performing jobs which exist in significant numbers in the national economy, and was, therefore, not disabled.

## DISCUSSION

**I.  Whether the ALJ erred in determining Claimant's residual functional capacity.**

In his first claim of error, Claimant argues that the ALJ erred in determining his residual functional capacity ("RFC"). (Cl.'s Mem. 3.) Specifically, Claimant alleges that the RFC determination made by the ALJ is error because the ALJ did not give substantial weight to the opinion of the Veterans Administration (VA) physicians who diagnosed Claimant with headaches which were not alleviated by medication.

It is well settled that the opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding it. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). A treating physician's report may be discounted when it is not accompanied by objective medical evidence or when it is conclusory. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). The ALJ can also reject the opinion of any physician when the evidence supports a contrary conclusion or when it is contrary to other statements or reports of the physician. *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th

Cir. 1991); *see also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).  A medical opinion provided by a claimant's treating physician may be entitled to controlling weight if the ALJ finds "that the treating source's medical opinion is 'well-supported' by 'medically acceptable' clinical and laboratory diagnostic techniques.  The adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion."  SSR 96-2p.  Additionally, the ALJ must find that the treating source's opinion is "not inconsistent" with other "substantial evidence" of record.  *Id*.  Even if a medical opinion is not entitled to controlling weight, however, the opinion of a treating physician is entitled to substantial or considerable weight unless good cause exists for not heeding it.  *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985) (per curiam).  "Good cause" exists when a treating physician's report is not accompanied by objective medical evidence or when it is conclusory.  *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  The ALJ can also reject the opinion of any physician when the evidence supports a contrary conclusion or when it is contrary to other statements or reports of the physician.  *See Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991); *see also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam).  The weight afforded a medical source's opinion on the issues of the nature and severity of a claimant's impairments is analyzed with respect to factors including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence the medical source submitted to support the opinion, the consistency of the opinion with the record as a whole, and the specialty of the medical source.  20 C.F.R. § 416.927(d).

The record reveals that follow up of Claimant's headaches conducted by a staff neurologist at the VA did not indicate any functional or work related limitations as a result of the headaches. Indeed neither of the treating physicians at the VA ever suggested or opined that the migraine headaches resulted in any functional limitations on Claimant's ability to perform work. Claimant also consulted with Dr. Reinaldo Verson of Columbus Clinic for headache who found the headaches to be painful and accompanied by nausea. (Tr. 335.) Dr. Verson however saw Claimant only once in a nine month span before offering his opinion and did not otherwise support the opinion with any objective evidence of duration, frequency or treatment options for the headaches. (Tr. 15, 335). In a June 2007, visit with Dr. Verson, Claimant reported that the headaches were present since 2005, and Claimant had continued working despite the presence of headache. (Tr. 335.) Medication was prescribed and office notes show that Claimant was well oriented and alert with memory function intact and appropriate levels of attention and concentration were present. (*Id.*) The ALJ thoroughly discussed this alleged malady and carefully reviewed the notes and findings of all the physicians who were told of the headaches by Claimant and noted that none of them found a specific resulting functional limitation from the headaches that would prevent or impair Claimant from work. (Tr. 15.) Both neurological examinations and a CT scan failed to show evidence of any abnormalities or any impairments of Claimant's nerve function (Tr. 306), and there was a normal notation as to other nerves tested. (Tr. 306.) Office notes by Dr. Beverly Boyd indicate that Claimant did not report any restrictions on activity due to headache.

Claimant also saw a staff psychiatrist at the VA Medical Center (Tr. 15, 347) in

7

December 2007, July 2008, December 2008, March 2009, and August 2009. The psychiatrist, Dr. Lokesh, opined in March 2010, that Claimant had marked limitations in all areas of functioning and an episode of decompensation which had a duration of two weeks. (Tr. 542-546). The contemporaneous treatment notes made by Dr. Lokesh, however, fail to support his March 2010 opinion. Although Dr. Lokesh found Claimant to have a short temper and recurrent nightmares (Tr. 528-530) he also noted that Claimant was alert, cooperative and had good eye contact with an absence of suicidal or homicidal ideation. (Tr. 530). Therapy was suggested along with diet and exercise. (Tr. 531-532). In the July 2008, visit Dr. Lokesh noted good interaction and eye contact accompanied by normal speech pattern although he also noted evidence of avoidance and hypervigilance. This same basic profile was documented at subsequent visits where good rapport and intact judgment and insight were noted despite a short temper (Tr. 459-461) and depressed mood. In August 2009 Claimant reported no side effects from the medications, denied deep depression and indicated good relationships within his family. (Tr. 446). While the March 2010 report by Dr. Lokesh asserted that Claimant suffered from marked limitations of functioning in all areas, the ALJ carefully weighed the opinion in light of the longitudinal record of care and treatment and properly found that the opinion of Dr. Lokesh was unsupported by the objective clinical evidence. *McSwain v. Bowen,* 814 F.2d 617 (11th Cir. 1987). Thus, no error is found as the ALJ's analysis of Claimant's RFC.

II.   **Whether the ALJ properly considered the side effects of Claimant's medications.**

Claimant next argues that the ALJ failed to consider the side effects of his medications in making his disability determination. (Cl.'s Br. 3.) Specifically, Claimant argues that the ALJ failed to analyze Claimant's claims of drowsiness and lack of concentration resulting from the use of his prescribed medications. (*Id.*)

In ruling on this issue, the Court of Appeals for the Eleventh Circuit has held that the ALJ has a duty to develop a full and fair record regarding the effect of a claimant's medications on his ability to work. *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981). In this case, although there is a notation by Dr. Boyd that the medications were not helpful (Tr. 342) there is no consistent complaint by Claimant to any of his physicians that the medication had side effects which resulted in impairments in his ability to work. Further, no physician indicated or suggested any limitations on Claimant's activities as a result of the medications. As stated above, in his August 2009 examination Claimant reported *no* side effects from his medication. (Tr. 446.)  Likewise, in March 2008 Claimant's physician reported no side effects from morphine other than being well rested and improved sleep. (Tr. 369.)  In four clinical presentations in 2009 and 2010 Claimant stated that the medication regimen was providing satisfactory relief and did not report adverse side effects. (Tr. 433-449.)  Claimant's testimony before the ALJ as to his activities of daily living do not include evidence of adverse side effects and Claimant's counsel who was present and participated in the hearing did not develop this issue in his examination of the Claimant under oath nor was the issue referenced in counsel's opening statement. The ALJ specifically asked Claimant whether he took pain medication (Tr. 35) and while Claimant carefully explained his medication regimen (Tr. 35-38) he never

9

referenced any adverse side effects. As such, the ALJ did not err in failing to analyze the alleged side effects of Claimant's medications.

### III.  Whether the ALJ adequately indicated the specific weight given to the evidence in this case.

Claimant briefly contends that the ALJ erred by not indicating the specific weight given to all of the medical evidence "specifically regarding the above cited medical evidence and the reasons therefore." (Cl.'s Br. 3.) Claimant cites *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987), in support of his argument. *Sharfarz* requires the ALJ to "state with particularly the weight he gave the different medical opinions and the reason therefor." *Id.* Claimant also cites SSR 96-2p and 96-5p, dealing with treatment of medical opinions. As discussed above in Section I, the ALJ extensively discussed Claimant's medical records and the weight he assigned to each. No error is found in the weight the ALJ assigned to the medical evidence.

Moreover, policy in this Circuit directs that "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived." *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998); *see also Cont'l Technical Services v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) (finding that a "simple contention" does not present an argument and therefore is waived); *Callahan v. Barnhart*, 186 F. Supp. 2d 1219, 1230 n.5 (M.D. Fla. 2002) ("Such a cursory treatment of a potentially important issue is taken by this Circuit to be a sign that the party has abandoned the issue.").

Out of an abundance of caution, however, Claimant's argument will be addressed.

The ALJ in this case specifically discussed the extensive record of treatment of the various providers from whom Claimant sought treatment and weighed each in light of his well-founded observation that Claimant's account of his injury and psychological disorders are characterized by inconsistencies which logically call into question his credibility. (Tr. 15, 16.) The ALJ expressly afforded "little weight" to the opinion of Dr. Lokesh that Claimant has marked limitations in all areas of functioning noting that the specific finding was unsupported by objective medical findings and inconsistent with the longitudinal record and treatment notes. (Tr. 16.) Further the ALJ analyzed the treatment record compiled as a result of Claimant's visits to Dr. Verson. (*Id.*) Claimant recounted that he began suffering from headache in 2005 yet continued to work. He was prescribed Axert and Replax for the headaches and did not return. Neither did he complain about adverse side effects nor seek a change in his medication for lack of effect. The ALJ noted that the statement provided by Dr. Verson (Tr. 334-35) was unsupported by objective evidence and expressly gave it "little weight." (Tr.15). In reviewing the examination notes prepared by William E. Roundtree, M.D. the ALJ gave "great weight" to Dr. Roundtree's opinion that Claimant's pain complaints were unusual given that Claimant was able to perform all aspects of the examination without difficulty and the subjective complaints were out of proportion to the physical findings. (Tr. 14). While the Claimant no doubt disagrees with the factual findings of the ALJ, such findings are amply supported by a thorough review of all medical evidence of record and consistent with the activities of daily living testified to by Claimant himself at the hearing. Claimant's health was considered by the ALJ to be stable and improved to the extent he

could resume walking his dogs and while following the advice of his health care providers to lose weight and exercise would, along with smoking cessation, be of benefit to Claimant, his condition as it exists does not preclude him from work.  Thus, no error is found and the Commissioner's decision is affirmed.

## CONCLUSION

WHEREFORE, it is hereby ordered that the decision of the Commissioner be **AFFIRMED**.

THIS the 30th day of April, 2012.

S/Stephen Hyles
UNITED STATES MAGISTRATE JUDGE